1  DENNIS M. GRADY, Bar No. 118461
   GRADY AND ASSOCIATES
2  3517 Camino Del Rio South, Suite 400
   San Diego, California  92108
3  Telephone:  (619) 528-2530

                                            2016 JUN 13  PM 2: 42

4

5  Attorneys for PLAINTIFF, KAM T. TAM

6

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF SAN DIEGO

10                    CENTRAL DIVISION

11
   KAM T. TAM,                    ) Case No.: 37-2016-00019810-CU-OE-CTL
12                                 )
                PLAINTIFF,         ) COMPLAINT FOR:
13                                 )
   vs.                             ) (1) WRONGFUL TERMINATION IN
14                                 ) VIOLATION OF PUBLIC POLICY;
   QUALCOMM, INC., an entity; and  ) (2) BREACH OF THE IMPLIED
15 DOES 1 - 40, inclusive,         ) COVENANT OF GOOD FAITH AND
                                   ) FAIR DEALING;
16            DEFENDANTS.          ) (3) VIOLATIONS OF THE FAMILY
                                   ) AND MEDICAL LEAVE ACT;
17                                 ) (4) VIOLATION OF CALIFORNIA
                                   ) LABOR CODE SECTION 1102.5;
18                                 ) (5) VIOLATION OF CALIFORNIA
                                   ) LABOR CODE SECTION 232.5;
19                                 ) (6) PROMISSORY ESTOPPEL
                                   )
20                                 ) JURY TRIAL DEMANDED
                                   )
21 _____)

22       PLAINTIFF KAM T. TAM complains and alleges as follows:

23                        **PARTIES**

24       1.   PLAINTIFF KAM T. TAM (hereinafter, "PLAINTIFF" or "Mr.

25  Tam") is, and at all relevant times was, a resident of the State

26  of California, County of San Diego.

27       2.   PLAINTIFF is informed and believes, and thereby

28  alleges, that DEFENDANT QUALCOMM, INC. (hereinafter, "Qualcomm")

                            -1-

                                        **EXHIBIT A**
                                            1

1   is, and at all times relevant was, an entity organized and

2   existing under and by virtue of the laws of a State unknown, with

3   a principle place of business in the State of California, County

4   of San Diego.

5       3.   The true names and capacities of the DEFENDANTS named

6   herein as DOES 1 through 40, inclusive, whether individual,

7   corporate, associate, or otherwise, are unknown to PLAINTIFF who

8   therefore sues such DEFENDANTS by fictitious names pursuant to

9   California Code of Civil Procedure Section 474.   PLAINTIFF is

10   informed and believes, and thereby alleges, that DOE DEFENDANTS

11   are California residents.   PLAINTIFF will amend this Complaint to

12   show such true names and capacities when they have been

13   determined.

14       4.   PLAINTIFF is informed and believes, and thereby

15   alleges, that each of the DEFENDANTS herein were, at all relevant

16   times, the agents, employees or representatives of the remaining

17   DEFENDANTS and were acting, at least in part, within the scope of

18   such relationship(s).

19                **FACTS COMMON TO ALL CAUSES OF ACTION**

20       5.   Mr. Tam began working at Qualcomm as a Patent Counsel

21   in 2004.   Mr. Tam had Bachelors and Masters degrees in Electrical

22   Engineering, as well as a law degree, significant experience as

23   an electrical engineer and patent practitioner prior to law

24   school, and was extremely knowledgeable in patent law, especially

25   as applied to Qualcomm's industry.   In or around April 19, 2008,

26   Mr. Tam was promoted to Senior Patent Counsel.   As a Senior

27   Counsel, Mr. Tam's duty was to prosecute Qualcomm's patents with

28   the United States Patent Office.   For the first seven years of

EXHIBIT A
2

1 employment with Qualcomm, Mr. Tam received ratings of "Often
2 Exceeds," "Consistently Meets +," or "Consistently Meets," and
3 received raises, stock options, and bonuses, reflecting his good
4 performance. Prior to 2008, Qualcomm's Chief Patent Counsels had
5 encouraged employees to discuss legal issues openly, and Mr. Tam
6 did so. Mr. Tam was a participant and his legal knowledge was
7 well recognized within the Department. Prior to 2008, Mr. Tam
8 was encouraged to pursue this goal. This was an area of
9 significance to Qualcomm, because licensing of its patent
10 portfolio made up approximately three quarters of Qualcomm's
11 profits, and low quality patents that ultimately were
12 unenforceable affected Qualcomm's profits, increased its
13 litigation costs, and therefore, would have a negative impact on
14 its stock values and shareholders.

15       6.    In 2008, Katherine Umpleby was hired to replace the
16 prior Chief Patent Counsel, Tom Rouse. After the reorganization,
17 one supervisor, Peng Zhu, recognizing Mr. Tam's legal knowledge
18 in the open legal issues discussions, went to a Qualcomm vice
19 president and specifically requested that Mr. Tam be placed on
20 his team.

21       7.    Mr. Tam initially requested that he not be assigned
22 under Mr. Zhu's supervision, because he did not want to acquiese
23 to the practice of Mr. Zhu's group of merely cranking out patents
24 in large quantity, without regard to quality. In house counsel
25 only reviewed the work of outside counsel for form compliance
26 rather than substance. This was harmful to the company in the
27 long term because future patent claims depend on the sufficiency
28 of the disclosures in the provisional applications. Such

EXHIBIT A
3

1  practices in Mr. Zhu's group were more detrimental in particular
2  because his group handled the most important part of Qualcomm's
3  patent portfolio, the LTE (Long Term Evolution) technology.

4      8.    On or around September of 2010, Mr. **Tam** had several
5  discussions with Ms. Umpleby and Mr. Zhu's supervisor, Robert
6  O'Connell. Mr. Tam said he would work in Mr. Zhu's group if he
7  was allowed to improve the work quality of the group. Mr. Tam
8  provided Ms. Umpleby and Mr. O'Connell with specifics of how to
9  improve the quality of work. Ms. Umpleby and Mr. O'Connell
10 rejected Mr. Tam's proposals. In the end, they assigned Mr. Tam
11 to work in Mr. Zhu.

12     9.    Mr. Tam owed his loyalty, as an employee and attorney,
13 to the ultimate client, Qualcomm. Therefore, Mr. Tam did not
14 want to mass-produce patents with questionable quality. After
15 failing to convince Ms. Umpleby and Mr. O'Connell, Mr. Tam
16 believed that this issue had to be addressed. Mr. Tam was aware
17 that there was an "Open Door Policy" encouraged by Qualcomm to
18 report work-related issues. Under this policy, Qualcomm promised
19 that it would not retaliate against employees for using the
20 policy to report problem issues. Sometime in or around October
21 of 2010, Mr. Tam went to Qualcomm's Human Resources ("HR") under
22 the Open Door Policy and discussed the same problems discussed
23 previously with Ms. Umpleby and Mr. O'Connell.

24     10.   Despite the no retaliation promise, immediately after
25 Ms. Umpleby learned of Mr. Tam's conversations with HR, the
26 Patent Department was swiftly reorganized again. Mr. Tam was
27 moved from reporting to a Vice President to reporting to Larry
28 Moskowitz, who had a history of mismanagement of his

**EXHIBIT A**

**4**

1  subordinates.   This reorganization was less than one month after
2  the prior reorganization, and was clearly retaliatory.
3       11.   Shortly after reporting to Mr. Moskowitz, constant
4  conflicts arose between Mr. Moskowitz and Mr. Tam.   Mr. Moskowitz
5  began a campaign of harassment of Mr. Tam.   Mr. Moskowitz
6  eventually gave Mr. Tam a written "Expectation Memo" for
7  "performance improvement," under a threat of further discipline
8  and/or termination.   Mr. Tam had never had any prior discipline.
9  This was the first time any supervisor had suggested that Mr.
10 Tam's work was not up to standards in over seven years working at
11 Qualcomm.   The Expectation Memo was to last one year.
12      12.   Nevertheless, Mr. Tam performed in accordance with the
13 Expectation Memo for several months.   Mr. Tam again asked to be
14 reassigned to report to a new supervisor, Scott Juneau.   Under
15 Mr. Juneau, as had been the case under prior supervisors, there
16 were no problems with Mr. Tam's work for approximately one year.
17 Mr. Juneau told Mr. Tam that Mr. Tam had passed the requirements
18 of the Expectation Memo.
19      13.   In December of 2012, Ms. Umpleby announced that she was
20 leaving Qualcomm.   Just one month prior to leaving, with full
21 awareness of Mr. Tam's problems with Mr. Moskowitz and that there
22 were no such problems under Mr. Juneau, and in a clear act of
23 malice, Ms. Umpleby reassigned Mr. Tam back to reporting to Mr.
24 Moskowitz.   Mr. Tam protested the reassignment to HR, and was
25 told that once Ms. Umpleby departed Qualcomm, the new Chief
26 Patent Counsel would likely reassign Mr. Tam to another
27 supervisor.
28 ///

14.   Tim Loomis became the new Chief Patent Counsel upon Ms. Umpleby's departure, in approximately June of 2013. Mr. Loomis did not reassign Mr. Tam as had been assured by HR, so Mr. Tam again went to HR to change supervisors. HR asked Mr. Tam how Mr. Tam would want to be reassigned. Mr. Tam replied that he would be more fit to work on assignments related to improving the quality of Qualcomm's patents. Mr. Tam consequently discussed with Mr. Loomis the need for the requested changes. Nevertheless, the request was denied. Mr. Loomis replied to Mr. Tam that there was no need for Mr. Tam to get involved in improving the quality of Qualcomm's patents because a similar project was already in progress. Later, neither Mr. Tam nor HR could verify that such a project existed at that time.

15.   Therefore, HR informed Mr. Tam that his request for reassignment to a new supervisor was formally denied. On or around October of 2013, Mr. Moskowitz presented Mr. Tam with a review, both orally and in writing, stating that Mr. Tam was not performing his job satisfactorily. HR, for the first time, began pushing Mr. Tam to resign voluntarily with a severance package. HR told Mr. Tam that if Mr. Tam stayed, he would have to continue reporting to Mr. Moskowitz. Mr. Tam decided to persevere and stay with the company.

16.   On or about January 20, 2014, Mr. Tam was advised by HR that Qualcomm was going to issue Mr. Tam a Performance Improvement Plan ("PIP"). Again, HR urged Mr. Tam that he should take a severance package prior to the PIP being issued, as the offer would not stay open after the PIP was issued. Chose to stay and received the PIP. Mr. Tam, upon reviewing the PIP,

1  objected that the terms of the PIP were so abstract and

2  subjective as to provide no objective measure of results for Mr.

3  Tam to ascertain if he were meeting the requirements.  The PIP

4  also contained significant, factual inaccuracies in describing

5  Mr. Tam's work and contributions to Qualcomm.  Basically, as

6  written, the PIP gave Mr. Moskowitz, who already had demonstrated

7  hostility towards Mr. Tam, free reign to claim Mr. Tam was not

8  meeting the standards, in retaliation for Mr. Tam's repeated

9  attempts to improve the quality of Qualcomm's patents rather that

10 create an inflated number of valueless patents.  For example, the

11 PIP required Mr. Tam to "improve the quality of his work product"

12 without any explanation of how the quality of Mr. Tam's work

13 product was deficient; to "take accountability for his

14 performance" without explaining how Mr. Tam had failed to do so;

15 "taking a leadership role in the Department" without requiring

16 Mr. Moskowitz to give Mr. Tam a "leadership role" or explaining

17 what this even meant; and "communicate at the level required of a

18 patent attorney" again without any guidelines regarding how Mr.

19 Tam's communications had not been at patent attorney level.

20 These were all extremely vague and overly broad goals, opening

21 the door for Mr. Moskowitz to shove Mr. Tam out.

22      17.  On January 29, 2014, Mr. Tam appealed the fairness of

23 the PIP via "The Qualcomm Way," which was supposed to be an

24 avenue by which employees could voice their concerns.  Mr. Tam

25 requested an unbiased review of the PIP, Mr. Tam's quality

26 concerns, and Mr. Tam's situation.  However, this request

27 apparently was not kept confidential or fair, because Mr. Tam's

28 ///

COMPLAINT

**EXHIBIT A**

**7**

1   reporting the problems seemed to exacerbate the hostility against
2   Mr. Tam.

3       18.   During the PIP period, meetings were held weekly.   Mr.
4   Moskowitz made demands that were based on unfair, subjective
5   assessments of the prior week's performance.   The demands were
6   contradictory, disorganized, and difficult to understand.   Mr.
7   Moskowitz insisted that Mr. Tam attend multiple two and three day
8   classes every week, refusing to allow Mr. Tam to take the courses
9   on-line, and insisted that Mr. Tam attend meetings having nothing
10  to do with Mr. Tam's duties, leaving insufficient time to meet
11  Mr. Moskowitz's productivity demands.   Eventually Human Resources
12  had to step in and allow Mr. Tam to take the classes on-line.

13      19.   Mr. Moskowitz escalated his harassment of Mr. Tam.   He
14  blamed Mr. Tam for clerical errors, errors made by others, and
15  accused Mr. Tam of performing sub par, based upon faulty
16  interpretations of patent law.   Mr. Tam was held to standards not
17  required of other patent counsel.

18      20.   The harassment by Mr. Moskowitz took its toll, and Mr.
19  Tam was forced to take FMLA leave in February of 2014.   Mr. Tam
20  was placed on anxiety and depression medications by his doctor.
21  In May of 2014, when Mr. Tam returned to work, Mr. Moskowitz told
22  Mr. Tam that there would be no adjustment time and the terms of
23  the PIP that had led to Mr. Tam's FMLA leave were going to be in
24  full force and effect immediately.   On May 7, 2014, Mr. Tam was
25  told that the PIP was being extended two weeks.   However, because
26  Mr. Tam's cases had all been transferred to other attorneys while
27  Mr. Tam was on leave, and Mr. Moskowitz refused to reassign them
28  ///

COMPLAINT

1  back to Mr. Tam, there was no way that Mr. Tam could meet the

2  productivity requirements of the PIP.

3       21.   Again, Human Resources urged Mr. Tam to take the prior

4  severance package offer.   Again, Mr. Tam chose to persevere.

5       22.   Since Mr. Tam had no case load, in order to fulfill the

6  terms of the PIP, Mr. Tam was told to (1) prepare a presentation

7  on a legal topic for Mr. Moskowitz's group; (2) prepare to help

8  another attorney organize a meeting; and (3) take over filing one

9  of Mr. Moskowitz's existent case applications (Qualcomm Docket

10 No. 141551P1).

11      23.   Mr. Tam scheduled the presentation for May 26, 2014.

12 Mr. Tam tried to get in contact with the other attorney with whom

13 he was to coordinate a meeting, but the attorney did not respond.

14 With regard to the third requirement, the most important part of

15 the patent, the patent claim set, prepared by Mr. Moskowitz used

16 an incorrect claim scope.   Mr. Tam worked with the actual

17 inventors to revise the claims with the appropriate scope, as Mr.

18 Tam knew he was being scrutinized with Mr. Moskowitz looking for

19 any excuse to fire Mr. Tam.   Mr. Tam's version of the application

20 was ultimately filed.

21      24.   On May 14, 2014, at the next PIP meeting, Mr. Tam

22 reported all of the above compliance with the PIP.   Mr. Moskowitz

23 and Mr. Gentry from Human Resources stated that Mr. Tam should

24 have done more work, despite knowing that Mr. Moskowitz had taken

25 all of Mr. Tam's cases away from Mr. Tam.   Mr. Tam asked what he

26 should do next, and was told only to "attend classes."

27      25.   On May 21, 2014, prior to allowing Mr. Tam's

28 presentation of a legal topic for which Mr. Tam had prepared and

COMPLAINT

**EXHIBIT A**

**9**

1  which was required by the PIP, Mr. Moskowitz arbitrarily decided

2  that Mr. Tam had not met the requirements of the PIP with regard

3  to "High Quality Preparation and Prosecution" (even though the

4  only application that Mr. Tam had been allowed to work on was

5  filed), "Taking Accountability of His Performance" (even though

6  Mr. Tam's performance was in the sole control of Mr. Moskowitz),

7  and "Taking on more of a Leadership Role in the IP Department"

8  (even though Mr. Tam had prepared the presentation which was

9  scheduled to take place in five days).  Human Resources told Mr.

10 Tam that Mr. Tam was being terminated and Mr. Tam's last day of

11 work was May 23, 2014.

12 **FIRST CAUSE OF ACTION**
**(Wrongful Termination In Violation of Public Policy Against All**
13 **Named DEFENDANTS and DOES 1-5 and 6-15, Inclusive.)**

14       26.   PLAINTIFF hereby realleges and incorporates by

15 reference herein each and every preceding paragraph of this

16 complaint.

17       27.   At all times relevant, Mr. Tam was an employee

18 DEFENDANTS.

19       28.   Mr. Tam repeatedly reported to DEFENDANTS' Human

20 Resources and management that he was being required to engage in

21 conduct which did, and/or he reasonably believe did, violate

22 California's and the United State's strong public policies as set

23 forth in the California Rules of Professional Conduct (including

24 but not limited to Rule 3-600), laws against fraud on

25 shareholders in overstating the value of poorly drafted patents

26 (including, but not limited to 18 USC §1514A, et seq., 15 U.S.C.

27 §78U-6, et seq.), and laws against unfair business practices

28 (including but not limited to California Business and Professions

EXHIBIT A
10

1  Code 17200).  Further, Mr. Tam's report of such conduct was
2  protected activity protected by California Labor Code section
3  1102.5.  Further, Mr. Tam's taking medical leave was protected
4  conduct under California's Family Rights Act and the Federal
5  Medical and Family Rights Act.  In addition, the DEFENDANTS'
6  conduct violated the public policies stated in the California
7  Fair Employment and Housing Act and the Americans With
8  Disabilities Act against disability discrimination, and
9  California Labor Code sections 1102.5 and 232.5 against
10 retaliation.
11      29.  DEFENDANTS terminated Mr. Tam wrongfully, in violation
12 of the strong public policies stated in the statutes listed
13 above, among others.
14      30.  As a proximate result of DEFENDANTS' termination of Mr.
15 Tam's employment in violation of the strong public policies of
16 the State of California and the United States of America,
17 PLAINTIFF has suffered substantial losses in earnings, bonuses,
18 deferred compensation, and other employment benefits and has
19 suffered embarrassment, humiliation and mental anguish, all to
20 his damage in an amount according to proof.
21      31.  DEFENDANTS committed the acts alleged herein
22 maliciously, fraudulently and oppressively with the wrongful
23 intention of injuring Mr. Tam, from an improper and evil motive
24 amounting to malice, fraud, oppression, and in conscious
25 disregard of Mr. Tam's rights.  Mr. Tam is thus entitled to
26 recover punitive damages from all DEFENDANTS in an amount
27 according to proof.
28 ///

EXHIBIT A
11

1    32.   Further, because this Complaint serves to enforce

2  strong public policies of the State of California and the United

3  States of America which inure to the public, PLAINTIFF is

4  entitled to attorneys fees and costs pursuant to California Code

5  of Civil Procedure §1021.5

6    WHEREFORE, PLAINTIFF requests relief as hereinafter

7  provided.

8                    **SECOND CAUSE OF ACTION**
    **(Breach of the Implied Covenant Of Good Faith and Fair Dealing**
9   **Against All Named DEFENDANTS and DOES 1-5 and 15-20, Inclusive.)**

10    33.   PLAINTIFF hereby realleges and incorporates by

11  reference herein each and every preceding paragraph of this

12  complaint.

13    34.   At all times relevant there existed, between the

14  parties, a contract of employment.   Implied into this contract,

15  under California law, is a covenant of good faith and fair

16  dealing, whereby neither party will do anything which interferes

17  with the right of the other party to receive the benefits

18  thereof.   Pursuant to the implied covenant of good faith and fair

19  dealing, any discretion under the terms of the contract must be

20  exercised in good faith.   Further, under the implied covenant of

21  good faith and fair dealing, Qualcomm agreed to follow its non-

22  retaliation policies set forth in its Open Door Policy.

23    35.   DEFENDANTS' conduct, as alleged above, violated this

24  implied covenant of good faith and fair dealing.

25    36.   As a proximate result of DEFENDANTS' breach of the

26  implied covenant of good faith and fair dealing, Mr. Tam has

27  suffered and continues to suffer substantial losses in earnings,

28  ///

-12-
COMPLAINT

**EXHIBIT A**
**12**

1   bonuses, deferred compensation, and other employment benefits all

2   to his damage in an amount according to proof.

3                          **THIRD CAUSE OF ACTION**
    **(Violations of the Family and Medical Leave Act Against all Named**
4              **DEFENDANTS and DOES 1-5 and 20-25, Inclusive.)**

5        37.   PLAINTIFF hereby realleges and incorporates by

6   reference herein each and every preceding paragraph of this

7   complaint.

8        38.   At all times relevant, PLAINTIFF was an employee

9   protected by the Family and Medical Leave Act, and DEFENDANTS

10  were employers required to comply with the Family and Medical

11  Leave Act.

12       39.   DEFENDANTS' conduct constituted retaliation for taking

13  leave protected under the Family and Medical Leave Act.

14       40.   As a proximate result of DEFENDANTS' conduct, PLAINTIFF

15  has suffered substantial losses in earnings, bonuses, deferred

16  compensation, and other employment benefits, all to his damage in

17  an amount according to proof.

18       41.   DEFENDANTS' conduct was not in good faith, entitling

19  PLAINTIFF to, in addition, liquidated damages equal to the entire

20  amount of lost wages, benefits, other lost compensation, and

21  interest in an amount according to proof.

22       42.   Further, PLAINTIFF has incurred and continues to incur

23  attorneys fees, costs, and expert fees, according to proof.

24       WHEREFORE, PLAINTIFF requests relief as hereinafter

25  provided.

26  ///

27  ///

28  ///

                              -13-

                                                  **EXHIBIT A**
                                                        **13**

**FOURTH CAUSE OF ACTION**
(Violations of California Labor Code Section 1102.5, against All Named DEFENDANTS and DOES 1-5 and 25-30, Inclusive.)

43.   PLAINTIFF hereby realleges and incorporates by reference herein each and every preceding paragraph of this complaint.

44.   PLAINTIFF was at all material times an employee covered by California Labor Code section 1102.5, which prohibits retaliation against an employee who makes a complaint or raises a concern regarding conduct which he reasonably believes, rightly or wrongly, to be a violation of state or federal law.   Here, PLAINTIFF was retaliated against, including his termination, for making such complaints and/or voicing such concerns.

45.   As a result of the illegal retaliation, PLAINTIFF has suffered substantial damages including emotional distress damages, physical harm, lost wages, and other damage/harm resulting from the conduct of DEFENDANTS.

46.   As a result of the illegal retaliation under California 1102.5, plaintiff has incurred attorneys fees and costs.


**FIFTH CAUSE OF ACTION**
(Violation of Labor Code Section 232.5, against All Named DEFENDANTS and DOES 1-5 and 30-35, Inclusive.)

47.   PLAINTIFF hereby realleges and incorporates by reference herein each and every preceding paragraph of this complaint.

48.   PLAINTIFF, at all times relevant, was an employee of DEFENDANT QUALCOMM, protected by California Labor Code section 232.5, which protects California employees from discharge or
///

-14-
COMPLAINT

**EXHIBIT A**
**14**

1  discrimination due to disclosing information regarding working
2  conditions.

3       49.  DEFENDANT, including but not limited to DEFENDANT
4  QUALCOMM, violated California Labor Code section 232.5, and
5  terminated and otherwise discriminated against PLAINTIFF for
6  making detailed disclosures about his working conditions, as
7  described above.

8       50.  As a result of the illegal retaliation, PLAINTIFF has
9  suffered substantial damages including emotional distress
10 damages, physical harm, lost wages; and other damage/harm
11 resulting from the conduct of DEFENDANTS.

12      51.  As a result of the illegal retaliation under California
13 Labor Code Section 232.5, plaintiff has incurred attorneys fees
14 and costs.

15                    **SIXTH CAUSE OF ACTION**
      **(Promissory Estoppel, against All Named DEFENDANTS and DOES 1-5**
16                      **and 35-40, Inclusive.)**

17

18      52.  PLAINTIFF hereby realleges and incorporates by
19 reference herein each and every preceding paragraph of this
20 complaint.

21      53.  DEFENDANTS, including but not limited to QUALCOMM,
22 represented to PLAINTIFF that its Open Door Policy and "Qualcomm
23 Way" programs were designed to allow employees to raise concerns
24 and offer suggestions without fear of retaliation.

25      54.  Because of DEFENDANTS' representations, PLAINTIFF
26 offered detailed criticism of the patent department, and its
27 practices which he believed to be illegal and/or harmful to the
28 company and it's investors.  But for DEFENDANTS' representations,

                           -15-

                                        **EXHIBIT A**
                                           **15**

1    PLAINTIFF would not have offered such complaints and concerns,

2    and he would have sought employment elsewhere rather than subject

3    himself to retaliation.

4         55.   However, because of his complaints and concerns offered

5    during the Open Door Policy and Qualcomm Way programs, DEFENDANTS

6    terminated PLAINTIFF'S employment.

7         56.   PLAINTIFF therefore seeks promissory estoppel against

8    Defendants, and return to the *status quo ante*, before his

9    termination.

10                              PRAYER

11        WHEREFORE, PLAINTIFF requests relief as follows:

12        1.   For damages according to proof including losses incurred

13   in seeking and performing substitute employment and in earnings,

14   bonuses, deferred compensation and other employment benefits;

15        2.   For interest on the amount of losses incurred in seeking

16   and performing substitute employment and in earnings, bonuses,

17   deferred compensation and other employment benefits at the

18   prevailing rates;

19        3.   For compensatory damages according to proof including

20   losses resulting from embarrassment, humiliation, mental anguish,

21   harm to reputation and emotional distress;

22        4.   That DEFENDANTS, their agents, successors, employees

23   and those acting in concert be permanently enjoined from engaging

24   in each of the unlawful practices, policies, usages and customs

25   set forth herein;

26        5.   For reinstatement of PLAINTIFF to the position from

27   which PLAINTIFF was wrongfully terminated or a comparable

28   position in DEFENDANTS' organization and reimbursement for all

**EXHIBIT A**

**16**

1  lost wages and work benefits attendant thereto that would have

2  been afforded PLAINTIFF but for said wrongful termination;

3       6.   For a declaration that DEFENDANTS engaged in (1)

4  Wrongful Termination in Violation of Public Policy; (2) Breach of

5  the Implied Covenant of Good Faith and Fair Dealing; (3)

6  Violations of the Family and Medical Leave Act; (4) Violation of

7  California Labor Code Section 1102.5; (5) Violation of California

8  Labor Code Section 232.5; and/or (6) Promissory Estoppel;

9       7.   That DEFENDANTS, their agents, successors, employees

10 and those acting in concert, be enjoined permanently from

11 engaging in each of the unlawful practices, policies, usages and

12 customs set forth herein;

13      8.   Civil damages under California Labor Code section

14 1102.5(f);

15      9.   Attorneys fees and costs pursuant to California Code of

16 Civil Procedure section 1021.5, and/or other provisions of law;

17      10.  Interest pursuant to 29 U.S.C. §2617(a)(1)(A)(ii); 29

18 CFR 825.400(c), and as otherwise allowed by law;

19      11.  Liquidated damages pursuant to 29 U.S.C.

20 §2617(a)(1)(A)(iii) equal to the entire amount of lost wages,

21 benefits, other lost compensation, and interest in an amount

22 according to proof;

23      12.  Attorneys fees, expert witness fees, and costs pursuant

24 to 29 U.S.C. §2617(a)(3) and 29 CFR 825.400(c); and

25 ///

26 ///

27 ///

28 ///

1    13.   For such other and further relief as the Court may deem

2  proper.                                    GRADY AND ASSOCIATES

3

4  DATED: June 1З, 2016                 By: _____
                                            DENNIS M. GRADY, Esq.
5                                           Attorneys for PLAINTIFF
                                            Kam T. Tam
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                  -18-
                                COMPLAINT