1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAM T. TAM,<br><br>                    Plaintiff,<br><br>v.<br><br>QUALCOMM, INC., an entity; and<br>DOES 1-40, inclusive,<br><br>                    Defendants. | Case No.: 17-CV-710 JLS (AGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 5) |

Presently before the Court is Defendant Qualcomm Inc.'s Motion to Dismiss Plaintiff's Complaint, ("MTD," ECF No. 5-1).  Also before the Court are Plaintiff Kam T. Tam's Response in Opposition to, ("Opp'n," ECF No. 6), and Defendant's Reply in Support of, ("Reply," ECF No. 7), Defendant's MTD.  The Court vacated the hearing on the motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 8.)  After considering the parties' arguments and the law, the Court **GRANTS** Defendant's MTD.

## BACKGROUND

This case arises from a dispute between Plaintiff Kam Tam and his employer Qualcomm.  Tam worked as a patent attorney for Qualcomm starting in 2004 and was promoted to Senior Patent Counsel in 2008.  ("Compl." ¶ 5, ECF No. 1-2.)  As a Senior

Counsel, Tam was responsible for prosecuting Qualcomm's patents at the U.S. Patent Office. (*Id.*) Plaintiff states that he received positive ratings in his feedback from his supervisors and his legal knowledge was well-recognized in his department. (*Id.*) Plaintiff states that licensing patents was a significant area of business for Qualcomm, constituting approximately three quarters of Qualcomm's profits. (*Id.*)

In 2008, Qualcomm hired a new Chief Patent Counsel, Katherine Umpleby, and as part of the department's reorganization, an attorney senior to Plaintiff, Mr. Peng Zhu, specifically requested that Plaintiff be assigned to his team. (*Id.* ¶ 6.) Plaintiff initially resisted this request because Plaintiff believed Mr. Zhu's group "merely crank[ed] out patents, without regard to quality." (*Id.* ¶ 7.) Plaintiff believed that Mr. Zhu's practice was harmful to the long-term success of the company. In September 2010, Plaintiff alleges that he shared this belief with the Chief Patent Counsel and Mr. Zhu's supervisor, but they declined Plaintiff's suggestions to improve work quality. (*Id.* ¶ 8.) In October 2010, Plaintiff utilized an "Open Door Policy" run by the Human Resources Department to report the same concerns previously expressed to the Chief Patent Counsel and Mr. Zhu's supervisor. (*Id.* ¶ 9.)

Plaintiff then alleges that in response to his use of the Open Door Policy the Patent Department was reorganized again and Plaintiff began reporting to Mr. Larry Moskowitz. (*Id.* ¶ 10.) Soon after this second reorganization, conflicts arose between Plaintiff and Mr. Moskowitz leading the latter to issue Plaintiff a written "Expectation Memo" for "performance improvement." (*Id.* ¶ 11.) This memo included warnings to Plaintiff of further discipline and possible termination—warnings that Plaintiff had not previously received. Plaintiff asked to be reassigned to a different supervisor, which was granted, and no problems were reported concerning Plaintiff for approximately one year. (*Id.* ¶ 12.) In December 2012, the Chief Patent Counsel, Ms. Umpleby, announced that she was leaving Qualcomm and reassigned Plaintiff back to Mr. Moskowitz. (*Id.* ¶ 13.) Plaintiff protested this arrangement and Human Resources told him that he would likely be transferred to a different supervisor once a new chief counsel was in place. (*Id.*)

Sometime around June 2013, Plaintiff requested transfer and reiterated to the new Chief Patent Counsel, Tim Loomis, his previous reasons why he was requesting transfer, namely the perceived lack of quality in Qualcomm's patents. (*Id.* ¶ 14.) The new Chief Patent Counsel denied the request and Human Resources denied a similar request to transfer. (*Id.* ¶ 15.) In October 2013, Mr. Moskowitz presented Plaintiff with a negative review and Human Resources offered Plaintiff a separation package, which Plaintiff did not accept. (*Id.*) In January 2014, Plaintiff was informed that he was being placed on a "Performance Improvement Plan" ("PIP") and again offered a separation package, which he did not accept. (*Id.* ¶ 16.) The terms of the PIP included goals for Plaintiff including "improve the quality of the work product" and "take accountability for his performance." (*Id.*) Plaintiff states that the PIP did not give him any explanation on how to achieve the plan or metrics to evaluation the plan. (*Id.*)

The PIP required Plaintiff to attend weekly meetings and take online training, which Plaintiff characterizes as harassing and retributive. (*Id.* ¶ 18.) Plaintiff alleges that Mr. Moskowitz blamed him for others' errors and held him to standards no one else was held to. In February 2014, Plaintiff took "FMLA leave" and was placed on anxiety and depression medication, which he states was a result of his work issues. (*Id.* ¶ 20.) Plaintiff returned to work in May 2014 and was told by Mr. Moskowitz that the terms of the PIP remained in effect. (*Id.*) Plaintiff alleges that Mr. Moskowitz transferred all Plaintiff's cases to other attorneys during the FMLA leave and thus he was unable to meet the PIP requirements. (*Id.*) Plaintiff went to Human Resources to complain and was urged to take a severance package, which he declined. (*Id.* ¶ 21.)

Mr. Moskowitz gave Plaintiff three tasks to complete including preparing a presentation, assisting another attorney in holding a meeting, and take over filing a patent application. (*Id.* ¶ 22.) Plaintiff alleges that he attempted to comply with the tasks, but Mr. Moskowitz was not satisfied with his performance. Specifically, Plaintiff states he had filed the patent he was assigned and had scheduled but not given his presentation. (*Id.* ¶ 25.) The attorney with whom Plaintiff was to hold a meeting did not respond. (*Id.* ¶ 23.)

Plaintiff was terminated on May 23, 2014. (*Id.*)

Plaintiff originally filed this action in San Diego Superior Court on June 13, 2016, alleging various causes of action under state and federal law. (*See* Compl. ¶ 28.) Defendant removed the action on April 7, 2017 to this Court on the basis of federal question jurisdiction, (ECF No. 1).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting

*Twombly*, 550 U.S. at 557).  Further, the Court need not accept as true "legal conclusions" contained in the complaint.  *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

The Court first reviews whether it has jurisdiction over this removal action.  Second, the Court examines the merits of Plaintiff's various claims.

### I.  Subject Matter Jurisdiction

In cases "brought in a State court of which the district courts of the United States have original jurisdiction," defendants may remove the action to federal court.  28 U.S.C. § 1441(a).  Section 1441 provides two bases for removal: diversity jurisdiction and federal question jurisdiction.  Federal courts have diversity jurisdiction "where the amount in controversy" exceeds $75,000, and the parties are of "diverse" state citizenship.  § 1332. Federal courts have federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  § 1331.

The party invoking the removal statute bears the burden of establishing that federal subject matter jurisdiction exists.  *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).  Moreover, courts "strictly construe the removal statute against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988)); *Takeda v. Nw. Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)).  "[F]ederal courts are under an independent obligation to examine their

own jurisdiction." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). Federal courts are courts of limited jurisdiction and generally may only exercise jurisdiction based on either diversity jurisdiction or federal question jurisdiction.

### A. *Diversity Jurisdiction*

The federal diversity jurisdiction statute provides that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has held that a corporation's principal place of business is determined by "the place where a corporation's officers direct, control, and coordinate the corporation's activities;" alternatively, its "nerve center," which is usually its main headquarters. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Here, Plaintiff is a citizen of California and alleges that Defendant's principal place of business is California. (Compl. ¶ 2.) Plaintiff alleges no information regarding Defendant's state of incorporation. (*Id.*) Defendant does not attempt to rebut Plaintiff's allegation as to its principal place of business. Therefore, the Court assumes, for the purposes of the pleading stage, that Defendant's principal place of business is in California. Due to lack of diversity, there is no subject matter jurisdiction based on the federal diversity statute. *See* 28 U.S.C. § 1332(a).

### B. *Federal Question Jurisdiction*

Federal question jurisdiction exists for "all civil actions arising under the Constitution, laws, or treaties of the United States." § 1331. For purposes of § 1331, federal courts must apply the "well-pleaded complaint rule." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). A cause of action arises under federal law for purposes of § 1331, and is therefore a basis for removal, "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Id.* (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

Thus, Plaintiff can only remove his case if there is federal question jurisdiction. The Court finds that Plaintiff crosses the "well-pleaded complaint" threshold. Plaintiff's first cause of action—wrongful termination based on public policy—is a state law rule of

decision. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 669 (1998). Plaintiff's wrongful termination claim obliquely references two federal whistleblower statutes, (*see* Compl. ¶ 28). However, when a wrongful termination claim, based on public policy, cites federal causes of action as the basis for public policy it does not transform the state cause of action into a federal one. *See Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 343–44 (9th Cir. 1996). Plaintiff's second, fourth, fifth, and six causes all sound in state law. (*See* Compl. ¶¶ 35, 44, 49, 56.) Plaintiff alleges violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612(a), which is a federal cause of action. Therefore, Plaintiff's FMLA claim is the only basis for subject matter jurisdiction. The Court finds that it has subject matter jurisdiction based on Plaintiff's third cause of action.

### C. Supplemental Jurisdiction

28 U.S.C. § 1367 allows a federal district court to hear all state law claims as long as there is an independent basis for jurisdiction. Under section 1367, a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). The Supreme Court has held that supplemental jurisdiction "may be exercised when federal and state claims have a 'common nucleus of operative fact' and would 'ordinarily be expected to [be tried] all in one judicial proceeding.'" *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (alteration in original) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Because the Court finds it has subject matter jurisdiction based on a federal question, it may exercise supplemental jurisdiction as long as the claims arise from the same common nucleus of operative fact. The Court finds that all of Plaintiff's state law claims revolve around his termination at Qualcomm, which he alleges was wrongful. Having found subject matter jurisdiction, the Court exercises supplemental jurisdiction over all state law claims. The Court next addresses the merits of Plaintiff's claims.

## II.   Wrongful Termination in Violation of Public Policy Claim

California Labor Code section 2922 provides in part, "[a]n employment, having no

specified term, may be terminated at the will of either party on notice to the other." Cal. Labor Code § 2922. The statutory presumption may be superseded by contract, express or implied, and limit the employer's right to fire the employee. *Foley*, 47 Cal. 3d at 665 (citing *Strauss v. A. L. Randall Co.*, 144 Cal. App. 3d 514, 517 (Ct. App. 1983)). If there is no contract then the employment is "at will" and an employee can be fired with or without good cause. *Id.* An employer's ability to fire an employee with or without cause is subject to limits imposed by public policy, "since otherwise the threat of discharge could be used to coerce employees into committing crimes, concealing wrongdoing, or taking other action harmful to the public weal." *Id.* An action for wrongful termination in violation of public policy sounds in tort.

The California Supreme Court has emphasized that a tort action alleging a breach of public policy must implicate a fundamental public policy concern. *Id.* at 669. Such a fundamental public policy generally will, at a minimum, be derived from a regulation, statute, or constitutional provision. *See Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 79 (1998). However, the Court noted that many statutes regulate private conduct between private individuals and do not implicate a fundamental public policy concern. *Foley*, 47 Cal. 3d at 669. A court must "inquire whether the discharge is against public policy and affects a duty which inures to the benefit of the public at large rather than to a particular employer or employee." *Id.*; *see also Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994) ("In order to sustain a claim of wrongful discharge in violation of fundamental public policy, [plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." (footnotes omitted)). There must also be a nexus between the protected activity taken by a plaintiff and the allegedly adverse treatment by his employer. *Turner*, 7 Cal. 4th at 1258.

Defendant points out additional considerations when in-house counsel avails himself of a tort action alleging violation of a public policy. (MTD 9.) In *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1169 (1994), the California Supreme Court considered

"whether an attorney's status as an employee bars . . . retaliatory discharge tort causes of action against the employer."  The Court discussed the relevant policies: "an attorney's highest duty is to the welfare and interests of the client. . . . they are bound at all events not to transgress a handful of professional ethical norms that distinguish their work from that of the non-attorney. *Id.* at 1181.  "In-house counsel, forced to choose between the demands of the employer and the requirements of a professional code of ethics have, if anything, an even more powerful claim to judicial protection than their nonprofessional colleagues." *Id.* The Court held that an in-house attorney could recover for wrongful termination only if a plaintiff meets the following standards.

First, a plaintiff can show that she was terminated for "following a mandatory ethical obligation prescribed by a professional rule or statute." *Id.* at 1188.  Second, if a plaintiff pleads that she engaged in conduct that is "merely ethically *permissible*, but not *required* by statute or ethical code" then a court has a two-fold inquiry. *Id.* at 1189.

> First, whether the employer's conduct is of the kind that would give rise to a retaliatory discharge action by a *non* attorney employee under *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083 (1992), and related cases; second, the court must determine whether some statue or ethical rule, such as the statutory exceptions to the attorney-client privilege codified in the Evidence Code specifically permits the attorney to depart from the usual requirement of confidentiality with respect to the client-employer and engage in the "nonfiduciary" conduct for which he was terminated.

*Id.* (citation omitted).

The California Supreme Court went on to explain that a cause of action in tort for retaliatory discharge was "limited in scope." *Id.*  "The lawyer's high duty of fidelity to the interests of the client work against a tort remedy that is coextensive with that available to the non-attorney employee." *Id.*

> [W]here the elements of a wrongful discharge . . . claim cannot, for reasons peculiar to the particular case, be fully established without breaching the attorney-client privilege, the suit must be dismissed in the interest of preserving the privilege.  We

9

> underline the fact that such drastic action will seldom if ever be appropriate at the demurrer stage of litigation.

*Id.* at 1190.

Defendant argues that Plaintiff has not alleged conduct that violates a public policy; at most Plaintiff's allegations speak to private business conduct. (MTD 8.)[1] Defendant goes on to contend that Plaintiff's wrongful termination claim cannot meet either of the two *General Dynamics* inquiries. (*Id.* at 10.)

Plaintiff responds that the standard for satisfying a wrongful termination claim based on public policy requires showing the policy is: (1) fundamental; (2) beneficial for the public; and (3) embodied in a statute or constitutional provision. (Opp'n 1–2 (citing *Turner*, 7 Cal. 4th at 1256).) Plaintiff simply restates the general rule for a *non*-attorney attempting to recover under a wrongful termination tort. Plaintiff offers no argument to rebut *General Dynamics*' teachings or its application to his particular facts. The Court finds that Plaintiff is an in-house counsel working for a corporation, Qualcomm. (*See* Compl. ¶ 5 ("Mr. Tam began working as a Patent Counsel in 2004.").) In order to survive a motion to dismiss, Plaintiff must meet the standards articulated in *General Dynamics*.

### A. Whether Plaintiff Had a Mandatory Duty to Disclose

The first *General Dynamics* prong requires the court identify a mandatory ethical code or statute requiring disclosure. Plaintiff cites the following ethical code and statutes in support of his wrongful termination claim: California Rule of Professional Conduct 3-600, 18 U.S.C. § 1514A, 15 U.S.C. § 78U-6, California Business and Professions Code § 17200, California Labor Code § 1102.5, and California Labor Code § 232.5. (Opp'n 2.) Defendant argues that Plaintiff cannot show he engaged in an affirmative act required by any of these ethical codes or statutes or resisted a demand by Defendant that is "unequivocally barred" by the professional code. (MTD 10.) The Court agrees.

First, Rule 3-600 does not require an affirmative act; by its plain language it says "a

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

member *may* take such actions as appear to the member to be in the best lawful interest of the organization." Cal. R. Prof'l Conduct 3-600 (emphasis added). By Plaintiff's own admission, the Rule's remedial actions are permissive not mandatory. (Opp'n 2.) Rule 3-600 is not mandatory.

Second, 18 U.S.C. § 1514A and 15 U.S.C. § 78U-6 do not include any mandatory ethical disclosure requirements, but rather prohibit employers from retaliating against an employee for certain disclosures. For example, § 1514A ("Sarbanes-Oxley") begins by stating: "No [publicly-traded] company . . . may discharge . . . or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee." 18 U.S.C. § 1514A. Section 78U-6 ("Dodd-Frank") contains similar language: "No employer may discharge . . . or in any other manner discriminate against, a whistleblower in the terms and conditions of employment . . . because of any lawful act done by the whistleblower." 15 U.S.C. § 78U-6(h)(1)(A). Neither federal statute mandates an in-house counsel to disclose confidential communications.

Third, California Business and Professions Code § 17200 prohibits unfair competition, which is "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "[S]ection 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotations and citations omitted). There is no mandatory or permissive disclosure language in the unfair competition statutory sections. Thus, this provision does not help Plaintiff.

Fourth, California Labor Code section 1102.5 prohibits employer retaliation against employees who disclose "a violation of state or federal statute or regulation." Cal. Labor Code § 1102.5(b). Like Sarbanes-Oxley and Dodd-Frank, this provision prohibits employers from taking action against employees in certain circumstances, but does not mandate an attorney to break confidentiality. Likewise, California Labor Code section

232.5 only prohibits an employer from taking certain actions, but does not address mandatory disclosure by an employee. *See* § 232.5.

Tellingly, Plaintiff does not maintain that any of these provisions provides a mandatory duty to disclose confidential communications. (*See generally* Opp'n.) Instead, these provisions prohibit employer retaliation in various circumstances. Thus, the Court finds that Plaintiff has not met the first prong of *General Dynamics*.

### B. Whether Plaintiff Meets the General Dynamics Standard for Permissive Duty to Disclose

Under *General Dynamics*' second prong, a plaintiff asserting a permissive duty to disclose confidential communications must prove two elements. First, an in-house attorney, suing under a wrongful termination claim, must show the employer's conduct is of the kind that would give rise to a retaliatory discharge action by a *non*-attorney employee under *Gantt*.[2] *General Dynamics*, 7 Cal. 4th at 1189 (citing *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083 (1992)). Second, an attorney-plaintiff must show that some statue or ethical rule, such as the statutory exceptions to the attorney-client privilege codified in the Evidence Code specifically permits the attorney to depart from the usual requirement of confidentiality with respect to the client-employer and engage in the "nonfiduciary" conduct for which he was terminated. *Id.*

In order to satisfy the first element, Plaintiff cites the following statutes as the public policy bases for his wrongful termination claim: Rule 3-600, 18 U.S.C. § 1514A (Sarbanes-Oxley), 15 U.S.C. § 78U-6 (Dodd-Frank), Cal. Bus & Prof. Code § 17200 (Unfair Business Practices), and California Labor Code §§ 232.5, 1102.5 (California whistleblower statutes).[3] (Opp'n 2.) The statutes would, according to Plaintiff, support his claim that

_____

[2] At a minimum, a public policy supporting a *Gantt* wrongful termination claim includes not only statutory and constitutional provisions, but also validly promulgated regulations. *Green v. Ralee Engineering Co.*, 19 Cal. 4th 66, 78, 82 (1998).

[3] The Court need not consider whether federal law preempts state law. As explained previously, *see supra* section I, state law wrongful termination claims based in public policy and citing federal statutes do not transform a state law claim into a federal law claim. *See Rains v. Criterion Systems, Inc.*, 80 F.3d 339,

Qualcomm's actions would give rise to a retaliatory discharge claim for a non-attorney employee. The Court declines to decide whether these statutes support a tort claim for wrongful termination contrary to public policy. Instead, the Court finds that Plaintiff's entire cause of action fails, as a matter of law, to meet the second element of the *General Dynamics*' standard requiring a statute or ethical rule *specifically* permitting departure from the usual requirement of confidentiality. Plaintiff's Complaint and Opposition briefing fails to identify any ethical rule or statute that specifically permits an in-house attorney to depart from the normal confidentiality rule. The Court first considers statutory grounds and then ethical rules.

### 1. Whether Statutory Grounds Specifically Permit Disclosure

Plaintiff cites no statute that permits disclosure of confidential communications in Plaintiff's situation, as currently pled. For example, the California Evidence Code provides the applicable standards for privileged communications. A communication made in confidence during the course of an attorney-client relationship is presumed to be privileged. Cal. Evid. Code § 917(a). Plaintiff does not advance any argument why his facts meet an exception to the privilege. *See, e.g.*, *id.* § 956 (crime-fraud exception). Therefore, the Court finds that, as pled, Plaintiff does not meet any statutory grounds that permits disclosure.

### 2. Whether California Rules of Professional Conduct Specifically Permit Disclosure

The only other potential ground to disclose confidential communications is by a professional rule. *See General Dynamics*, 7 Cal. 4th at 1189. The California Supreme Court later clarified that "[o]ur reference to 'professional rule' [in *General Dynamics*] was specifically to the Rules of Professional Conduct, a code of conduct adopted pursuant to statute by the California State Bar with the approval of this court and binding on all

---

343–44 (9th Cir. 1996). Therefore, there is no federal preemption issue and the Court need not depart from the *General Dynamics* framework.

attorneys in the state." *Green*, 19 Cal. 4th at 78 (citing Cal. Bus. & Prof. Code §§ 6076–77). Plaintiff cites only California Rule of Professional Conduct 3-600 as supporting his tort action.

California Rule of Professional Conduct 3-600 provides in relevant part:

> (B) If a member acting on behalf of an organization knows that an actual or apparent agent of the organization acts or intends or refuses to act in a manner that is or may be a violation of law reasonably imputable to the organization, or in a manner which is likely to result in substantial injury to the organization, the member shall not violate his or her duty of protecting all confidential information as provided in Business and Professions Code section 6068, subdivision (e). Subject to Business and Professions Code section 6068, subdivision (e), the member may take such actions as appear to the member to be in the best lawful interest of the organization. Such actions may include among others:
>
> (1) Urging reconsideration of the matter while explaining its likely consequences to the organization; or
>
> (2) Referring the matter to the next higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest internal authority that can act on behalf of the organization.
>
> (C) If, despite the member's actions in accordance with paragraph (B), the highest authority that can act on behalf of the organization insists upon action or a refusal to act that is a violation of law and is likely to result in substantial injury to the organization, the member's response is limited to the member's right, and, where appropriate, duty to resign in accordance with rule 3-700.

Cal. R. Prof'l Conduct 3-600.

Defendant argues that Rule 3-600 does not "specifically permit" an attorney to disclose attorney-client communications. (MTD 11.) According to Defendant, an attorney must resign rather than disclose privileged communications. (*Id.*) Plaintiff counters that the possible remedial actions described in subpararagraphs B and C are permissive, not mandatory. (Opp'n 2.) Therefore, he did not have to resign, as required by 3-600(C), and instead could disclose confidential information. (*See id.*)

A plain reading of Rule 3-600(B) does not support Plaintiff's position. It reads: "If a member . . . knows that an actual or apparent agent of the organization acts . . . in a manner that is or may be a violation of law . . . *the member shall not violate his or her duty of protecting all confidential information*, as provided in Business and Professions Code section 6068, subdivision (e)." Cal. R. Prof'l Conduct 3-600. This is an affirmative duty to protect all confidential information. The cross-reference to Business and Professions Code section 6068, subdivision (e) further bolsters the plain reading because that section requires an attorney to "maintain inviolate the confidence . . . of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1).[4] Any remedial actions allowed by Rule 3-600(B) are "[s]ubject to Business and Professions Code section 6068, subdivision (e)." Thus, no matter what action Plaintiff elected to take under Rule 3-600(B) those actions were subject to his duty to protect all confidential information. Furthermore, the only remedy provided by Rule 3-600(C) is resignation. There simply is no remedy that does not either require maintaining the duty of confidentiality or to resign.

In sum, Plaintiff does not argue any mandatory rule requires disclosure of confidential information. Nor does Plaintiff invoke any statute or rule of professional conduct that specifically permits departing from the normal confidentiality standard. As currently pled, Plaintiff fails to meet either of *General Dynamics*' two bases for allowing a wrongful termination tort claim. However, the Court is mindful that the *General Dynamics* court stated that dismissing a suit in the interest of preserving the attorney-client privilege at the motion to dismiss stage will seldom if ever be appropriate. 7 Cal. 4th at 1190. The Court does not dismiss Plaintiff's claim with prejudice because it is possible he may be able to plead sufficient facts to support a claim without violating the attorney-client privilege. Therefore, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and

---

[4] Section 6068(e)(2) provides a narrow exception allowing an attorney to reveal confidential information when an attorney believes "disclosure is necessary to prevent a criminal act that the attorney reasonably believes is likely to result in death of, or substantial bodily harm to, an individual." Plaintiff's Complaint does not reflect anything approximating death or substantial bodily harm; thus, this exception does not apply.

17-CV-710 JLS (AGS)

**DISMISSES WITHOUT PREJUDICE** Plaintiff's first cause of action.

## III.     Implied Covenant of Good Faith and Fair Dealing

"The law implies in every contract a covenant of good faith and fair dealing." *Koehrer v. Superior Court*, 181 Cal. App. 3d 1155, 1169 (Ct. App. 1986).   These obligations are not the terms of the contract itself, but rather are obligations imposed by law.  *See Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 573 (1973).  The implied covenant ensures that "neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Brown v. Superior Court*, 34 Cal. 2d 559, 564 (1992).  The covenant only protects the express terms of the contract and "not . . . some general public policy interest not directly tied to the contract's purpose."  *Carma Developers Inc. v. Marathon Dev. Cal.*, 2 Cal. 4th 342, 373 (1992).

In employment contracts, the implied covenant of good faith and fair dealing "cannot supply limitations on termination rights to which the party have not actually agreed."  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 340 (2000).  California Labor Code section 2922 "establishes the presumption that an employer may terminate its employees at will, for any or no reason.  A fortiori, the employer may act peremptorily, arbitrarily, or inconsistently, without providing specific protections such as prior warning, fair procedures, objective evaluation, or preferential reassignment."  *Id.* at 350.  "Precisely because employment at will allows the employer freedom to terminate the relationship as it chooses, the employer does not frustrate the employee's contractual rights merely by doing so."  *Id.*

The presumption of a contract at will may be "overcome by evidence that despite the absence of a specified term the parties agreed that the employer's power to terminate would be limited in some way, e.g., by a requirement that termination be based only on 'good cause.'"  *Foley*, 47 Cal. 3d at 677 (citations omitted).  Limiting the employer's power to terminate requires either an express contract or an implied-in-fact contract.  The implied covenant of good faith and fair dealing imposes no independent limits on an employer's prerogative to dismiss employees.  *Guz*, 24 Cal. 4th at 351–52.  An employee will need to demonstrate either an express contract or an implied in fact contract and not simply a claim

alleging breach of the implied covenant.

Here, Plaintiff alleges Defendant violated the implied covenant of good faith and fair dealing. Plaintiff states "[a]t all times relevant there existed, between the parties, a contract of employment. . . . [and] any discretion under the terms of the contract must be exercised in good faith." (Compl. ¶ 34.) Additionally, Defendant "agreed to follow its non-retaliation policies set forth in its Open Door Policy."[5] (*Id.*) Defendant does not specifically attempt to rebut Plaintiff's claim, but instead argues that in order to prove a breach of the implied covenant of good faith and fair dealing Plaintiff would have to reveal confidential attorney-client communications. (*See* MTD 17.)

Plaintiff's statement that there was "a contract of employment" is a legal conclusion. There are no facts, for example, that the parties agreed to an express contract, i.e., if there were terms when Plaintiff was hired or what those terms might have been. The Court finds that, as pled, there was no express contract and that the statutory presumption of an at-will contract applies. However, that does not conclude the inquiry because the California Supreme Court has stated that an implied-in-fact contract may arise during an employee's employment. *See Guz*, 24 Cal. 4th at 336–37. Thus, Plaintiff alleges that Defendant agreed to follow the non-retaliation policies set forth in the Open Door Policy. This could give rise to an implied-in-fact contract.

The relevant factors to determine whether an implied-in-fact contract might exist include "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continues employment, and the practices of the industry in which the employee is engaged." *Pugh v. See's Candies, Inc.*, 116 Cal. App. 3d 311, 327 (Ct. App. 1981) (footnotes omitted); *see*

---

[5] Plaintiff alleges that the Open Door Policy supplies the terms for the breach of the implied covenant of good faith and fair dealing and his promissory estoppel claim. (Compl. ¶¶ 34, 53.) Going forward, Plaintiff will need to clearly articulate his bases for either a breach of the implied covenant or promissory estoppel. The implied covenant of good faith and fair dealing assumes there is a contract. Promissory estoppel assumes that there is no contract, but employs equitable principles to allow enforcement of a promise. *See US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 905 (Ct. App. 2005).

*also Foley*, 47 Cal. 3d at 681 (quoting *Pugh* factors and emphasizing the plaintiff had "repeated oral assurances of job security"). *But see Guz*, 24 Cal. 4th at 343 (declining to "hold that *Foley*, 47 Cal. 3d at 681, as holding that long successful service, standing alone, can demonstrate an implied-in-fact contract right not to be terminated at will").

Plaintiff's "long successful service"—from when he was hired in 2004 to when he was fired in 2014—is not, by itself, a basis, by itself, to create an implied in fact contract. *See Guz*, 24 Cal. 4th at 343. However, the Open Door Policy, which Plaintiff alleges set forth non-retaliation policies, may constitute a personnel policy that would create an implied in fact contract. *See Pugh*, 116 Cal. App. 3d at 327. This raises a new issue: a plaintiff may bring both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, but when both causes of action cite the same underlying breach, the implied covenant claim is superfluous. *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014) (citing *Guz*, 24 Cal. 4th at 327).

As currently pled, Plaintiff appears to be alleging a breach of an implied-in-fact contract based on the Open Door Policy, but the cause of action stated in the Complaint is breach of the implied covenant of good faith and fair dealing. Such a cause of action would be duplicative of the implied in fact contract. *See id.* (citing, e.g., *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1392 (1990)). If Plaintiff wishes to plead facts to support an express contract and a breach of the implied covenant of good faith and fair dealing then he may do so. If Plaintiff wishes to plead facts to support an implied-in-fact contract then he may do so. However, alleging breach of <u>both</u> an implied-in-fact contract and the implied covenant, for the same term (violating the Open Door Policy), is superfluous and both causes cannot be maintained. *See Guz*, 24 Cal. 4th at 352. The dismissal is without prejudice so Plaintiff can clarify his cause of action and facts supporting this cause. Additionally, if Plaintiff's claim goes forward he will need to be able to either meet an exception to the attorney-client privilege or use non-privileged facts. *See General Dynamics*, 7 Cal. 4th at 1190–91. The Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's

Complaint as to his second cause of action.

## IV.    Family and Medical Leave Act

Neither party has raised the issue of statute of limitations.  A district court may consider and *sua sponte* dismiss a complaint as untimely as long as the defendant has not waived the defense.[6]  *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993) (collecting cases).  The statute of limitations for an FMLA claim is two years after the date of the last event constituting the alleged violation for which the action is brought.  *See* 29 U.S.C. § 2617(c)(1).  The statute of limitations is three years if there is a willful violation of section 2615.  *See id.* § 2617(c)(2).  Here, Plaintiff's last event for an FMLA violation occurred when he was fired on May 23, 2014.  He filed this action in state court on June 13, 2016.  This is outside the two year statute of limitations.

The FMLA and the Supreme Court have not expressly defined "willful" as used in this statute.  *See Golez v. Potter*, No. 09CV0965 AJB WMC, 2012 WL 368218, at *4 (S.D. Cal. Feb. 3, 2012).  Other circuit courts adopted the Supreme Court's definition of willful in the context of the Fair Labor Standards Act.  *See id.* (collecting cases).  The United States Supreme Court held that an employer acts "willfully" when he or she "either knew or showed reckless disregard for the matter of which its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  If "an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If any employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful.]"  *Id.* at 135 n.13.

Plaintiff pleads that he took "FMLA leave in February of 2014."  (Compl. ¶ 20.)  At the time Plaintiff took his leave, he was already on the "Performance Improvement Plan"

---

[6] The Court notes that a violation of the statute of limitations is an affirmative defense that is generally required to be included in a responsive pleading under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8.  However, the Ninth Circuit has held that failure to raise a statute of limitations defense in initial pleading did not waive the defense at summary judgment where there is no prejudice to plaintiff. *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984).  Here, the dismissal is without prejudice and Plaintiff may file an amended complaint alleging facts that meet the statute of limitations defense.

("PIP") and had already been offered severance packages. (*See id.* ¶ 16.) Plaintiff returned to work in May 2014 and on May 7, 2014 was told that his PIP would be extended for two weeks. (*Id.* ¶ 20.) During his FMLA leave, Plaintiff's cases were transferred to other attorneys. (*Id.*) Plaintiff then alleges that his supervisor gave him three tasks to show compliance with the PIP, but "arbitrarily decided that Mr. Tam had not met the requirements of the PIP." (*Id.* ¶¶ 22, 26.)

The Court finds that, as currently pled, Plaintiff has not alleged that Defendant's actions were a willful violation of the FMLA statute. Nor does the Court finds sufficient facts to support a willful violation. For example, the apparent cause for Plaintiff's firing was Mr. Moskowitz's "arbitrary" decision that Plaintiff did not meet the requirements of the PIP. Accordingly, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's third cause of action.[7]

## V. Violations of California Labor Code Sections 1102.5 and 232.5

### A. California Labor Code Section 1102.5

California Labor Code section 1102.5 provides employee protections for certain whistleblowing activities. At the time of the alleged retaliation, the statute provided:

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local,

---

[7] The dismissal of the FMLA cause of action presents an interesting question. Does the Court's finding as to the FMLA cause of action undermine the original jurisdiction to hear this case under the removal statute? *See supra* section I. The Court finds that it need not remand the case at this time. Jurisdiction, for purposes of federal question jurisdiction, must be determined from the face of the complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Plaintiff's complaint alleges a violation of the FMLA and because the dismissal of this cause of action is without prejudice, Plaintiff may plead facts sufficient to state a claim.

> state, or federal rule or regulation, regardless of whether
> disclosing the information is part of the employee's job duties.

Cal. Labor Code § 1102.5(b) (2014). In order to plead a prima facie case of retaliation, a plaintiff must show that she engaged in a protected activity, her employer subjected her to an adverse employment action, and there is a causal link between the protected action and the adverse action. *See Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (Ct. App. 2005). The employee must have an actual belief that the employer's actions were unlawful and the employee's belief, even if mistaken, must be reasonable. *Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 933–34 (Ct. App. 2007).

Defendant argues that Plaintiff cannot assert this cause of action because of section 1102.5(g). (MTD 14.) Section 1102.5(g) provides: "This section does not apply to rules, regulations, or policies that implement, or to actions by employers against employees who violate, the confidentiality of the lawyer-client privilege of Article 3 . . . of, Chapter 4 of Division 8 of the Evidence Code." Cal. Labor Code § 1102.5(g). Defendant argues that all of Tam's protected disclosures involve attorney-client privilege or attorney work product. (MTD 14.) Therefore, Plaintiff's 1101.5 claim fails due to 1102.5(g). Plaintiff offers no argument rebutting section 1102.5(g). (*See* Opp'n 3–4.)

The Court largely agrees with Defendant. The plain language of section 1102.5(g) exempts the whistleblower scheme in section 1102.5(b) if an employee would violate the confidentiality of the lawyer-client privilege. Thus, in order to prevail Plaintiff would need to establish an exception to the lawyer-client privilege found in Article of Chapter 4 of the Evidence Code in order to proceed with a section 1102.5 claim. *See supra* section II.B.1 (discussing exceptions to lawyer-client privilege). The Court finds that Plaintiff has not established an exception to privilege and therefore his section 1102.5 claim fails.

However, the Court declines to hold that all of Plaintiff's claims are per se barred by the attorney-client privilege or attorney work product. The California Supreme Court in *General Dynamics* made two critical observations: first, "the contours of the statutory attorney-client privilege should continue to be strictly observed" and second, "trial courts

can and should apply an array of ad hoc measures from their equitable arsenal designed to permit the attorney plaintiff to attempt to make the necessary proof while protect from disclosure client confidences subject to privilege." 7 Cal. 4th at 1190–91. This reasoning is persuasive for Plaintiff's state law claims. The Court finds there is no per se bar to maintaining the suit. Therefore, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint as to his fourth cause of action.

### B. California Labor Code Section 232.5

Plaintiff's fifth cause of action alleges that Defendant violated California Labor Code section 232.5, which provides that an employer may not discharge or otherwise discriminate against an employee who discloses information about the employer's "working conditions." Cal. Labor Code § 232.5(c). Plaintiff alleges that Defendant terminated Plaintiff for "making detailed disclosures about his working conditions, as described above." (Compl. ¶ 49.) Plaintiff references his previously disclosed facts but goes no farther in explaining this particular cause of action.

Defendant argues that section 232.5(d) precludes this cause of action. (*See* MTD 14.) Section 232.5(d) provides "[t]his section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer." Cal. Labor Code § 232.5(d). Qualcomm has not agreed to disclose any communications protected by attorney-client privilege nor any other proprietary information, which Plaintiff would necessarily need to prove his claim. (MTD 14–15.)

Plaintiff replies that there is no reason to think discussions of working conditions would ever implicate confidential information. (Opp'n 4.) "A discussion of working conditions could easily involve regular lines of communications unimpeded by attorney-client privilege." (*Id.*)

As with Plaintiff's other claims, the Court finds that Plaintiff's claim is not per se barred by attorney-client privilege or proprietary information restrictions in section

232.5(d).  *See supra* section V.A.  It is possible that Plaintiff could plead facts to state a claim that does not implicate any proprietary or privileged information.  This does not answer the question of whether Plaintiff has alleged sufficient facts to plausibly state a claim for relief.

Plaintiff's section 232.5 cause of action fails because Plaintiff does not allege any facts supporting the statute's requirement that an employee disclose information about the employer's working conditions.  As a court in this district recently observed, the California Legislature did not define the phrase "working conditions" and there is a dearth of case law on the issue.  *United States ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1030–31 (S.D. Cal. 2017).  The court did quote at length an unpublished California Court of Appeal case that examined the legislative history of section 232.5 at length.  The relevant analysis is as follows:

> The legislative history material presented to this court includes the acknowledgment [that] "the phrase working conditions is cited dozens of times in the Labor Code, but is not actually defined.  Defining working conditions would be like defining work, each industry and profession requires various skills, protocols, attire, etc."  The material also includes the following definition: "Working conditions are those conditions determined by the employer as a condition of employment.  For example, one must wear a blue tie."
>
> . . .
>
> Examples of working conditions provided in the legislative history material include attire, proper behavior, break room condition, elevator maintenance, seat comfort, temperature, lighting, uniforms, hair requirements, breaks, restroom facilities, and "even one's required attitude."  In an enrolled bill report, contained within the legislative history material, working conditions are described as "(e.g., hours, workplace safety, benefits)."  In an analysis from the Senate Rules Committee, the reference to working conditions is followed by "(e.g., hours, uniforms, occupation, safety)."

*Id.* at 1031 (quoting *Massey v. Thrifty Payless, Inc.*, 2014 WL 2901377, at *5 (Cal. Ct. App. June 27, 2014) (unpublished decision) (internal citations omitted)).  The court noted

that the California Court of Appeal did not come to a conclusion, but adopted the following construction: "Working conditions are those conditions determined by the employer as a condition of employment." *Id.*

Here, Plaintiff does not allege plausible facts that he disclosed any information about his working conditions. As previously mentioned, Plaintiff makes no effort to explain which working condition was at issue or who he reported it to. For example, Plaintiff went to his supervisors and then Human Resources in September and October 2010 complaining about the quality of patents. (Compl. ¶¶ 8–9.) Plaintiff alleges no facts showing how a discussion about work quality was a condition of employment at Qualcomm. Further, Plaintiff was not fired until May 2014, which undermines any sort of causality between the alleged disclosure of a working condition and the termination. *See Clark Cnty. School Dist.*, 532 U.S. at 273. It appears that all of Plaintiff's subsequent discussions with either his supervisors or Human Resources centered on either his reassignment or him being placed on the Performance Improvement Plan. (*See, e.g.*, Compl. ¶ 15 ("HR informed Mr. Tam that his request for reassignment to a new supervisor was formally denied.").)

In sum, Plaintiff simply has not pleaded plausible facts to support a violation of section 232.5(c). Therefore, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint as to his fifth cause of action.

## VI. Promissory Estoppel

Plaintiff asserts a promissory estoppel claim against Defendant. Specifically, he argues that the Open Door Policy and the Qualcomm Way were designed to allow employees to raise concerns without fear of retaliation, Plaintiff relied on that representation, and Defendant terminated Plaintiff based on his complaints using those programs. (Compl. ¶¶ 53–55.)

California follows the Restatement's definition of promissory estoppel. "Under [the promissory estoppel] doctrine a promisor is bound when he should reasonably expect a substantial chance of position, either by act or forbearance, in reliance on his promise, if

injustice can be avoided only by its enforcement." *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249 (1969). The California Supreme Court has also explained that the purpose of promissory estoppel "is to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable." *Raedeke v. Gibralter Sav. & Loan Ass'n*, 10 Cal. 3d 665, 672–73 (1974).

Here, the parties' argument is limited to whether the statute of limitations applies, (MTD 15), or not, (Opp'n 4–5). The fundamental issue here is not whether the statute of limitations applies, but rather whether the doctrine of promissory estoppel applies at all. The Court finds that it does not. Plaintiff describes that under the Open Door Policy "Qualcomm promised that it would not retaliate against employees for using the policy to report work-related issues." (*Id.* ¶ 9.) This is a bargained-for exchange. Qualcomm promised that it would not retaliate. Plaintiff promised to report a work-related issue that he might not otherwise do. Plaintiff relied on Qualcomm's promise to his detriment. *See Youngman*, 70 Cal. 2d at 250 ("In other words, where the promisee's reliance was bargained for, the law of consideration applies; and it is only where the reliance was unbargained for that there is room for application of the doctrine of promissory estoppel." (quoting *Healy v. Brewster*, 59 Cal. 2d 455, 463 (1963))). This result is not surprising: Plaintiff alleges violations of the implied covenant of good faith and fair dealing, which are based in contract. *See supra* section III. Alternatively, if Plaintiff alleges an implied in fact contract based on the Open Door Policy then promissory estoppel is not appropriate. Finally, the Court finds that it cannot evaluate the Qualcomm Way policy because Plaintiff has not pled facts supporting what the policy specifically provided for or how exactly Plaintiff relied on that policy.

Therefore, the Court **GRANTS IN PART** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint as to his sixth cause of action.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's MTD, (ECF No. 5). The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint, (ECF No. 1), and **GRANTS** Plaintiff leave to file an amended complaint, if any, within <u>thirty (30) days from when this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated:  January 16, 2018

Hon. Janis L. Sammartino
United States District Judge