DENNIS M. GRADY, Bar No. 118461
MARK STIFFLER, Bar No. 125239
GRADY AND ASSOCIATES
3517 Camino Del Rio South, Suite 400
San Diego, California  92108
Telephone:  (619) 528-2530
Email: gradyfedonly@msn.com

Attorneys for PLAINTIFF, KAM T. TAM

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAM T. TAM, | ) Case No.: 3:17-CV-00710-JLS (AGS) |
| PLAINTIFF, | ) |
| vs. | ) **THIRD AMENDED COMPLAINT FOR:** |
| QUALCOMM, INC., an entity; and DOES 1 - 25, inclusive, | ) **(1) WRONGFUL TERMINATION AND OTHER ADVERSE TREATMENT IN VIOLATION OF PUBLIC POLICY;** |
| DEFENDANTS. | ) **(2) BREACH OF IMPLIED CONTRACT;** |
| | ) **(3) VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT.** |
| | ) **JURY TRIAL DEMANDED** |

PLAINTIFF KAM T. TAM complains and alleges as follows[1]:

**JURISDICTION**

1.   This Court has jurisdiction under 28 U.S.C. §1331 over PLAINTIFF's FMLA claim, as well as supplemental jurisdiction under 28 U.S.C. §1367 over PLAINTIFF's state law claims.

-1-
THIRD AMENDED COMPLAINT
3:17-CV-00710-JLS (AGS)

## VENUE

2. The events or omissions giving rise to Plaintiff's claims occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

3. PLAINTIFF KAM T. TAM (hereinafter, "PLAINTIFF" or "Mr. Tam") is, and at all relevant times was, a resident of the State of California, County of San Diego.

4. PLAINTIFF is informed and believes, and thereby alleges, that DEFENDANT QUALCOMM, INC. (hereinafter, "Qualcomm") is, and at all times relevant was, an entity organized and existing under and by virtue of the laws of a State unknown, with a principle place of business in the State of California, County of San Diego.

5. The true names and capacities of the DEFENDANTS named herein as DOES 1 through 40, inclusive, whether individual, corporate, associate, or otherwise, are unknown to PLAINTIFF who therefore sues such DEFENDANTS by fictitious names pursuant to California Code of Civil Procedure Section 474. PLAINTIFF is informed and believes, and thereby alleges, that DOE DEFENDANTS are California residents. PLAINTIFF will amend this Complaint to show such true names and capacities when they have been determined.

6. PLAINTIFF is informed and believes, and thereby alleges, that each of the DEFENDANTS herein was, at all relevant times, the agents, employees or representatives of the remaining

1  DEFENDANTS and were acting, at least in part, within the scope of
2  such relationship(s).

### FACTS COMMON TO ALL COUNTS

7.  Mr. Tam began working at Qualcomm as a Patent Counsel in 2004.  Mr. Tam has Bachelors and Masters degrees in Electrical Engineering, as well as a law degree, significant experience as an electrical engineer and patent practitioner prior to law school, and was extremely knowledgeable in patent law, especially as applied to Qualcomm's industry.  In or around April 19, 2008, Mr. Tam was promoted to Senior Patent Counsel.  As a Senior Counsel, Mr. Tam's duty was to prosecute Qualcomm's patents with the United States Patent Office.  For the first seven years of employment with Qualcomm, Mr. Tam received ratings of "Often Exceeds," "Consistently Meets +," or "Consistently Meets," and received raises, stock options, and bonuses, reflecting his good performance.  Prior to 2008, Qualcomm's Chief Patent Counsels had encouraged employees to discuss legal issues openly, and Mr. Tam did so.  Mr. Tam was a participant and his legal knowledge was well recognized within the Department.  Prior to 2008, Mr. Tam was encouraged to pursue this goal.  This was an area of significance to Qualcomm, because licensing of its patent portfolio made up approximately three quarters of Qualcomm's profits, and low quality patents that ultimately were unenforceable affected Qualcomm's profits, invited litigation, increased its litigation costs, and would have a negative impact on its stock values and shareholders.

8.  In 2008, Katherine Umpleby was hired to replace the

prior Chief Patent Counsel, Tom Rouse. After the reorganization, one supervisor, Peng Zhu, recognizing Mr. Tam's legal knowledge in the open legal issues discussions, went to a Qualcomm vice president and specifically requested that Mr. Tam be placed on his team.

9. Mr. Tam initially requested that he not be assigned under Mr. Zhu's supervision, because he did not want to acquiese to the practice of Mr. Zhu's group of merely cranking out patents in large quantity, without regard to quality. In-house counsel only reviewed the work of outside counsel for form compliance rather than substance. This was harmful to the company in the long term because future patent claims and the avoidance of patent litigation depended on the sufficiency of the disclosures in the provisional applications. Such practices in Mr. Zhu's group were more detrimental in particular because his group handled the most important part of Qualcomm's patent portfolio, the LTE (Long Term Evolution) technology.

10. On or around September of 2010, Mr. Tam had several discussions with Ms. Umpleby and Mr. Zhu's supervisor, Robert O'Connell. Mr. Tam said he would work in Mr. Zhu's group if he was allowed to improve the legal quality of the patents of the group. Mr. Tam provided Ms. Umpleby and Mr. O'Connell with specifics of how to improve the quality of patent legal work. Ms. Umpleby and Mr. O'Connell rejected Mr. Tam's proposals. In the end, they assigned Mr. Tam to work in Mr. Zhu.

11. Mr. Tam believed that he owed his loyalty, as an employee and attorney, to the ultimate client, Qualcomm, and that he had a mandatory duty under the Business and Professions code,

1  Rules of Professional Conduct, and common law fiduciary
2  obligations to report to his client the legal deficiencies of the
3  patents and patent production process.  After failing to convince
4  Ms. Umpleby and Mr. O'Connell of the necessity for producing
5  legally adequate patents, Mr. Tam believed as a matter of
6  mandatory duty to his client that this issue had to be further
7  addressed.  Mr. Tam was aware that there was an "Open Door
8  Policy" encouraged by Qualcomm to report work-related concerns
9  and issues.  Under this policy, Qualcomm promised that it would
10 not retaliate against employees for using the policy.  Sometime
11 in or around October of 2010, Mr. Tam relying on this promise
12 went to Qualcomm's Human Resources ("HR") under the Open Door
13 Policy and discussed the same legal problems discussed previously
14 with Ms. Umpleby and Mr. O'Connell.
15       12.  Despite the no retaliation promise, immediately after
16 Ms. Umpleby learned of Mr. Tam's conversations with HR, the
17 Patent Department was swiftly reorganized again.  Mr. Tam was
18 moved from reporting to a Vice President to reporting to Larry
19 Moskowitz, who had a history of mismanagement of his
20 subordinates.  This reorganization was less than one month after
21 the prior reorganization, and was clearly retaliatory.
22       13.  Shortly after reporting to Mr. Moskowitz, constant
23 conflicts arose between Mr. Moskowitz and Mr. Tam.  Mr. Moskowitz
24 began a campaign of harassment of Mr. Tam.  Mr. Moskowitz
25 eventually gave Mr. Tam a written "Expectations Memo" for
26 "performance improvement," under a threat of further discipline
27 and/or termination.  Mr. Tam had never had any prior discipline.
28 This was the first time any supervisor had suggested that Mr.

1 Tam's work was not up to standards in over seven years working at
2 Qualcomm. The Expectations Memo was to last one year. The
3 Expectations Memo was imposed on Mr. Tam in substantial part in
4 retaliation for his availing himself of the Open Door Policy.

5     14.  Nevertheless, Mr. Tam performed in accordance with the
6 Expectation Memo. Several months later, Mr. Tam again asked to be
7 reassigned to report to a new supervisor, Scott Juneau. Under
8 Mr. Juneau, as had been the case under prior supervisors, there
9 were no problems with Mr. Tam's work for approximately one year.
10 Mr. Juneau told Mr. Tam that Mr. Tam had passed the requirements
11 of the Expectation Memo.

12    15.  In December of 2012, Ms. Umpleby announced that she was
13 leaving Qualcomm. Just one month prior to leaving, with full
14 awareness of Mr. Tam's problems with Mr. Moskowitz and that there
15 were no such problems under Mr. Juneau, and in a clear act of
16 malice, Ms. Umpleby reassigned Mr. Tam back to reporting to Mr.
17 Moskowitz. Mr. Tam protested the reassignment to HR, and was
18 told that once Ms. Umpleby departed Qualcomm, the new Chief
19 Patent Counsel would likely reassign Mr. Tam to another
20 supervisor.

21    16.  Tim Loomis became the new Chief Patent Counsel upon Ms.
22 Umpleby's departure, in approximately June of 2013. Mr. Loomis
23 did not reassign Mr. Tam as had been assured by HR, so Mr. Tam
24 again went to HR to change supervisors. HR asked Mr. Tam how Mr.
25 Tam would want to be reassigned. Mr. Tam replied that he would
26 be more fit to work on assignments related to improving the legal
27 quality of Qualcomm's patents. Mr. Tam consequently discussed
28 with Mr. Loomis the need for the requested changes.

1 Nevertheless, the request was denied. Mr. Loomis replied to Mr.
2 Tam that there was no need for Mr. Tam to get involved in
3 improving the legal quality of Qualcomm's patents because a
4 similar project was already in progress. Later, neither Mr. Tam
5 nor HR could verify that such a project existed at that time.

6     17.  Therefore, HR informed Mr. Tam that his request for
7 reassignment to a new supervisor was formally denied. On or
8 around October of 2013, Mr. Moskowitz presented Mr. Tam with a
9 review, both orally and in writing, stating that Mr. Tam was not
10 performing his job satisfactorily. The review was imposed on Mr.
11 Tam, in substantial part, in retaliation for his availing himself
12 of the Open Door Policy. HR, for the first time, began pushing
13 Mr. Tam to resign voluntarily with a severance package. The push
14 out was imposed on Mr. Tam, in substantial part, in retaliation
15 for his availing himself of the Open Door Policy. HR told Mr.
16 Tam that if Mr. Tam stayed, he would have to continue reporting
17 to Mr. Moskowitz. As a contentious attorney who was duty bound
18 to his client, Mr. Tam decided to persevere and stay with the
19 company.

20     18.  On or about January 20, 2014, Mr. Tam was advised by HR
21 that Qualcomm was going to issue Mr. Tam a Performance
22 Improvement Plan ("PIP"). The PIP was imposed on Mr. Tam in
23 substantial part in retaliation for his availing himself of the
24 Open Door Policy. Again, HR urged Mr. Tam that he should take a
25 severance package prior to the PIP being issued, as the offer
26 would not stay open after the PIP was issued. Mr. Tam chose to
27 stay and received the PIP. Mr. Tam, upon reviewing the PIP,
28 objected that the terms of the PIP were so abstract and

subjective as to provide no objective measure of results for Mr. Tam to ascertain if he were meeting the requirements.  The PIP also contained significant, factual inaccuracies in describing Mr. Tam's work and contributions to Qualcomm.  The unfairness and deficiencies of the PIP were motivated by Defendants in substantial part for Mr. Tam using the Open Door Policy.  Basically, as written, the PIP gave Mr. Moskowitz, who already had demonstrated hostility towards Mr. Tam, free reign to claim Mr. Tam was not meeting the standards, in, substantial part in retaliation for Mr. Tam's use of the Open Door Policy.  For example, the PIP required Mr. Tam to "improve the quality of his work product" without any explanation of how the quality of Mr. Tam's work product was deficient; to "take accountability for his performance" without explaining how Mr. Tam had failed to do so; "taking a leadership role in the Department" without requiring Mr. Moskowitz to give Mr. Tam a "leadership role" or explaining what this even meant; and "communicate at the level required of a patent attorney" again without any guidelines regarding how Mr. Tam's communications had not been at patent attorney level.  These were all extremely vague and overly broad goals, opening the door for Mr. Moskowitz to shove Mr. Tam out in substantial part because Mr. Tam availed himself of the Open Door Policy.

    19.  On January 29, 2014, Mr. Tam appealed the fairness of the PIP via "The Qualcomm Way," which was supposed to be an avenue by which employees could voice their concerns without retaliation.  Mr. Tam expected an unbiased review of the PIP, Mr. Tam's patent quality concerns, and Mr. Tam's situation. He also expected a fair review and no retaliation.  However, this appeal

apparently was not kept confidential or fair, because Mr. Tam's reporting the problems seemed to exacerbate the hostility against Mr. Tam.

20.   During the PIP period, meetings were held weekly. Motivated in substantial part by retaliation for Mr. Tam using the Qualcomm Way and Open Door procedures, Mr. Moskowitz made demands that were based on unfair, subjective assessments of the prior week's performance.  The demands were also contradictory, disorganized, and difficult to understand, likely intentionally so. In further retaliation, Mr. Moskowitz insisted that Mr. Tam attend multiple two and three day classes every week, refusing to allow Mr. Tam to take the courses on-line, and insisted that Mr. Tam attend meetings having nothing to do with Mr. Tam's duties, leaving insufficient time to meet Mr. Moskowitz's productivity demands.  Eventually Human Resources had to step in and allow Mr. Tam to take the classes on-line after Mr. Tam disclosed the situation to HR.

21.   Mr. Moskowitz escalated his retaliation of Mr. Tam.  He blamed Mr. Tam for clerical errors, errors made by others, and accused Mr. Tam of performing sub par, based upon faulty interpretations of patent law. In disparate treatment, Mr. Tam was held to standards not required of other patent counsel.

22.   The harassment and retaliation by Mr. Moskowitz took its toll, and Mr. Tam was forced to take FMLA leave in February of 2014.  Mr. Tam was placed on anxiety and depression medications by his doctor.  In May of 2014, when Mr. Tam returned to work, Mr. Moskowitz told Mr. Tam that there would be no adjustment time and the terms of the PIP that had led to Mr.

Tam's FMLA leave were going to be in full force and effect immediately. On May 7, 2014, Mr. Tam was told that the PIP was being extended two weeks. However, because Mr. Tam's cases had all been transferred to other attorneys while Mr. Tam was on leave, and Mr. Moskowitz refused to reassign them back to Mr. Tam, there was no way that Mr. Tam could meet the productivity requirements of the PIP. Defendants made it impossible for Mr. Tam to successfully complete the requirements of the PIP in order to fabricate a pretext for firing him to conceal Defendants' true, unlawful motivation for firing him (i.e. his use of FMLA, his disability, his use of the Qualcomm Way Policy, and/or his use of the Open Door Policy.

23. Again, Human Resources urged Mr. Tam to take the prior severance package offer. Again, Mr. Tam chose to persevere.

24. Because Mr. Tam had no case load, then in order to fulfill the terms of the unwarranted PIP, Mr. Tam was told to (1) prepare a presentation on a legal topic for Mr. Moskowitz's group; (2) prepare to help another attorney organize a meeting; and (3) take over filing one of Mr. Moskowitz's existing case applications (Qualcomm Docket No. 141551P1).

25. Mr. Tam scheduled the presentation for May 26, 2014. Mr. Tam tried to get in contact with the other attorney with whom he was to coordinate a meeting, but the attorney did not respond. With regard to the third requirement, the most important part of the patent, the patent claim set, prepared by Mr. Moskowitz used an incorrect claim scope. Mr. Tam worked with the actual inventors to revise the claims with the appropriate scope, as Mr. Tam knew he was being scrutinized with Mr. Moskowitz looking for

any excuse to fire Mr. Tam. Mr. Tam's version of the application was ultimately filed.

26. On or about May 14, 2014, at the next PIP meeting, Mr. Tam reported all of the above compliance with the PIP. Mr. Moskowitz and Mr. Gentry from Human Resources falsely stated that Mr. Tam should have done more work, despite knowing that Mr. Moskowitz had taken all of Mr. Tam's cases away from Mr. Tam. Mr. Tam asked what he should do next, and was told only to "attend classes."

27. On or about May 21, 2014, prior to allowing Mr. Tam's presentation of a legal topic for which Mr. Tam had prepared and which was "required" by the PIP, Mr. Moskowitz arbitrarily decided in retaliation that Mr. Tam had not met the requirements of the PIP with regard to "High Quality Preparation and Prosecution" (even though the only application that Mr. Tam had been allowed to work on was filed), "Taking Accountability of His Performance" (even though Mr. Tam's performance was in the sole control of Mr. Moskowitz), and "Taking on more of a Leadership Role in the IP Department" (even though Mr. Tam had prepared the presentation which was scheduled to take place in five days). Human Resources told Mr. Tam that Mr. Tam was being terminated and Mr. Tam's last day of work was May 23, 2014. There was no lawful basis for firing Mr. Tam, and the reasons offered are pretextual

28. On or about May 12, 2016, Mr. Tam and Defendant QUALCOMM entered into a stipulation which extended all time limits for Mr. Tam's claims until June 13, 2016 (Exhibit 1 hereto). On June 13, 2016, Mr. Tam filed this action. All claims

are timely in all respects.

**FIRST COUNT**
**A(Wrongful Termination)and Other Adverse Treatment In Violation of Public Policies Against QUALCOMM and DOES 1-5 and 6-15, Inclusive.)**

29. PLAINTIFF hereby realleges and incorporates by reference herein each and every preceding paragraph of this complaint.

30. As a first basis for this count, Mr. Tam was willfully fired by Defendants and otherwise willfully adversely treated by them for taking medical leave protected by the strong public policies of California's Family Rights Act and the federal Family and Medical Leave Act as well as the strong public policies of the Fair Employment and Housing Act and American's with Disabilities Act against an employer retaliating against an employee who achieves medical leave as an accommodation of his disabilities.

31. As a second basis for this count, the Defendants fired and otherwise adversely treated Mr. Tam in violation of the strong public policies of the California Fair Employment and Housing Act (FEHA) and the Americans with Disabilities Act (ADA) against disability discrimination and retaliation for requesting and/or achieving an accommodation of his disabilities.  Pursuant to the FEHA, Plaintiff was protected from disability discrimination because he had a disability (anxiety and depression), and/or because Qualcomm regarded him as having a disability, and/or because he had a record of having a disability, and/or because he had a medical condition which could lead to a disability.  At a minimum, Qualcomm plausibly regarded

Plaintiff as having a disability and/or as having a medical condition which could lead to a disability because Qualcomm approved his FMLA leave, and the FMLA only authorizes leave for employees who have a substantial medical condition, and, moreover, Plaintiff required the maximum (twelve weeks) of FMLA leave.  In addition, Qualcomm plausibly regarded Plaintiff as having a disability and/or a condition which could lead to a disability because of the interaction Plaintiff had with Qualcomm management (which resulted in adverse treatment of him) prior to and immediately after he returned from FMLA (i.e. accommodation) leave.  Just the way plaintiff was targeted by Qualcomm immediately after his return from the FMLA leave alone, plausibly supports the conclusion that such treatment was motivated in part by his disability and/or the recent use of the leave as an accommodation of his disability.  Such treatment included, but was not limited to, not returning him to his same job duties (even in contravention of FMLA requirements), extending his PIP, transferring his work to other attorneys thus  making it impossible for Plaintiff to successfully complete the requirement of the PIP, irrationally stating that Plaintiff should have done more work, deciding that Plaintiff did not meet the requirements of the PIP, and then firing Plaintiff.

    32.  Given the parties' stipulation of May 12, 2016, (Exhibit 1) this count was timely filed on June 13, 2016 within the applicable statute of limitations.

    33.  DEFENDANTS terminated Mr. Tam wrongfully, in violation of the strong public policies stated in the statutes listed above.

34. As a proximate result of DEFENDANTS' termination of Mr. Tam's employment in violation of the strong public policies of the State of California and the United States of America, PLAINTIFF has suffered substantial losses in earnings, bonuses, deferred compensation, and other employment benefits and has suffered embarrassment, humiliation and mental anguish, all to his damage in an amount according to proof.

35. DEFENDANTS committed the acts alleged herein willfully, maliciously, fraudulently and oppressively with the wrongful intention of injuring Mr. Tam, from an improper and evil motive amounting to malice, fraud, oppression, and in conscious disregard of Mr. Tam's rights. Mr. Tam is thus entitled to recover punitive damages from all DEFENDANTS in an amount according to proof.

36. Further, because this Complaint serves to enforce strong public policies of the State of California and the United States of America which inure to the public, PLAINTIFF is entitled to attorneys fees and costs pursuant to California Code of Civil Procedure §1021.5 and/or other provisions of law.

37. WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

**SECOND COUNT**
**(Breach of Implied Contract Against All Named DEFENDANTS and DOES 1-5 and 15-20, Inclusive.)**

38. PLAINTIFF hereby realleges and incorporates by reference herein each and every preceding paragraph of this complaint.

39. QUALCOMM's written "Open Door" policy stated "Qualcomm encourages employees to raise any concerns or suggestions they

may have about work-related issues." The Open Door Policy also stated "Protections against Retaliation. Qualcomm will not tolerate any retaliation for reporting a concern . . . . Any violation of this policy will result in discipline up to and including termination of employment."

40. QUALCOMM's written "Qualcomm Way" Policy stated

> We welcome and encourage questions or concerns raised by employees. Accordingly, Qualcomm will not tolerate retaliation against anyone for raising concerns in good faith regarding an actual or suspected violation of our Code, Company policy or the law. Raising a concern in 'good faith' means that, to your knowledge, the information you have provided us is truthful and accurate. Our stance against retaliation ensures that you can raise a concern or assist in an investigation in good faith without fear of retaliation for doing so.

41. Under the Open Door Policy, Qualcomm promised that it would not retaliate against employees for using the policy to report work-related issues. This is a bargained-for exchange. Qualcomm promised that it would not retaliate. Mr. Tam promised to report work-related issues that he might otherwise not do. Mr. Tam relied on Qualcomm's promise to his detriment because he was fired and otherwise adversely treated in substantial part for using the Open Door Policy. This was a breach of an implied contract between the parties.

42. Similarly, QUALCOMM breached an implied contract by retaliating against Mr. Tam in violation of the Qualcomm Way policy because he exercised his rights under that policy.

43. At all times relevant Mr. Tam did all the things he was obligated to do to ensure that he lived up to his obligations under the contract. However, Qualcomm did not. Instead, on a continuing basis from shortly after the time Plaintiff used the

Open Door policy in October 2010 and ending upon his termination in may 2014, Qualcomm violated the Open Door policy by continuously retaliating against Plaintiff for using it.  Thus, the initial retaliation was the second reorganization of the patent department; following that Mr. Moskowitz begun a campaign of harassment of Plaintiff; following that Mr. Moskowitz gave Plaintiff a written "expectations memo" under threat of further discipline; following that Mr. Moskowitz gave Plaintiff an unsatisfactory job review; following that HR began pushing Plaintiff to quit; following that Plaintiff was subjected to an unfair and deficient PIP; following that HR again urged Plaintiff to quit.  Following that, in January 2014, Plaintiff appealed the fairness of the PIP via the  "Qualcomm Way," which also included anti-retaliation protections; following that, in further retaliation of Plaintiff for using the Open Door procedure and now the Qualcomm Way procedure as well, Mr. Moskowitz made demands based on unfair assessments of the prior week's performance; following that, Mr. Moskowitz insisted that Plaintiff attend meetings that had nothing to do with Plaintiff's job duties; following that Mr. Moskowitz blamed Plaintiff for errors made by others and accused him of performing sub-par; following that, when Plaintiff returned to work from FMLA in May 2014, Mr. Moskowitz told him that there would be no adjustment time, and the terms of the PIP that led to Plaintiff's FMLA leave were going to be in full force and effective immediately; following that, on May 7, 2014, the PIP was extended for two weeks; following that, it became impossible for Plaintiff to meet the productivity requirements of the PIP because his cases had

been transferred to other attorneys while he had been on FMLA leave; following that were the false criticisms from Mr. Moskowitz and Mr. Gentry from Human Resources that Plaintiff should have done more work despite knowing that Mr. Moskowitz had taken all of Plaintiff's cases away from Plaintiff; following that was the decision by Mr. Moskowitz that Plaintiff had not met the requirements of the PIP; following that was Plaintiff being terminated in May 2014. Thus, on a continuing basis from the time Plaintiff first used the "Open Door" policy in October 2010 until his termination in May 2014, Plaintiff was retaliated against for using the policy.  Moreover, from the time he used the "Qualcomm Way" policy in January 2014 until his termination in May 2014, Plaintiff was retaliated against for using <u>that</u> policy as well.

44.   As a proximate result of DEFENDANTS' breach of the implied contract, Mr. Tam has suffered and continues to suffer substantial losses in earnings, bonuses, deferred compensation, and other employment benefits all to his damage in an amount according to proof.

45.   WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

**THIRD COUNT**
**(Violations of the Family and Medical Leave Act Against all Named DEFENDANTS and DOES 1-5 and 20-25, Inclusive.)**

46.   PLAINTIFF hereby realleges and incorporates by reference herein each and every preceding paragraph of this complaint.

47.   At all times relevant, PLAINTIFF was an employee protected by the Family and Medical Leave Act, and DEFENDANTS were employers required to comply with the Family and Medical

Leave Act.

48. DEFENDANTS' conduct including extending the PIP; denying PLAINTIFF an opportunity to successfully complete the unwarranted, retaliatory PIP; and firing PLAINTIFF was in substantial part in wilful retaliation for his taking leave protected under the Family and Medical Leave Act.  Although DEFENDANTS wrongful treatment of PLAINTIFF in violation of the FMLA was willful, it did not need to be for FMLA violations to occur because the stipulation between the parties (Exhibit 1, hereto), extended all the time limitations for the claims PLAINTIFF pursues in this action.

49. As a proximate result of DEFENDANTS' conduct, PLAINTIFF has suffered substantial losses in earnings, bonuses, deferred compensation, and other employment benefits, and other harm, including emotional distress, all to his damage in an amount according to proof.

50. DEFENDANTS' conduct was not in good faith, entitling PLAINTIFF to, in addition, liquidated damages equal to the entire amount of lost wages, benefits, other lost compensation, and interest in an amount according to proof.

51. Further, PLAINTIFF has incurred, continues to incur and is entitled to his attorneys fees, costs, and expert fees, according to proof.

WHEREFORE, PLAINTIFF requests relief as hereinafter provided.

**PRAYER**

WHEREFORE, PLAINTIFF requests relief as follows:

1. For damages according to proof including losses incurred in seeking and performing substitute employment and in earnings, bonuses, deferred compensation and other employment benefits;

2. For interest on the amount of losses incurred in seeking and performing substitute employment and in earnings, bonuses, deferred compensation and other employment benefits at the prevailing rates;

3. For compensatory damages according to proof including losses resulting from embarrassment, humiliation, mental anguish, harm to reputation and emotional distress;

4. That DEFENDANTS, their agents, successors, employees and those acting in concert be permanently enjoined from engaging in each of the unlawful practices, policies, usages and customs set forth herein;

5. For reinstatement of PLAINTIFF to the position from which PLAINTIFF was wrongfully terminated or a comparable position in DEFENDANTS' organization and reimbursement for all lost wages and work benefits attendant thereto that would have been afforded PLAINTIFF but for said wrongful termination;

6. For a declaration that DEFENDANTS engaged in (1) Wrongful Termination in Violation of Public Policy; (2) Breach of Implied Contract; and/or (3) Violations of the Family and Medical Leave Act.

7. That DEFENDANTS, their agents, successors, employees and those acting in concert, be enjoined permanently from engaging in each of the unlawful practices, policies, usages and customs set forth herein;

8. Attorneys fees and costs pursuant to California Code of

Civil Procedure section 1021.5, and/or other provisions of law;

9. Interest pursuant to 29 U.S.C. §2617(a)(1)(A)(ii); 29 CFR 825.400(c), and as otherwise allowed by law;

10. Liquidated damages pursuant to 29 U.S.C. §2617(a)(1)(A)(iii) equal to the entire amount of lost wages, benefits, other lost compensation, and interest in an amount according to proof;

11. Attorneys fees, expert witness fees, and costs pursuant to 29 U.S.C. §2617(a)(3) and 29 CFR 825.400(c); and

12. For such other and further relief as the Court may deem proper.

GRADY AND ASSOCIATES

DATED: January 7, 2019        By: _/s/ Dennis M. Grady_
                                   DENNIS M. GRADY, Esq.

**PLAINTIFF DEMANDS TRIAL BY JURY**

GRADY AND ASSOCIATES

DATED: January 7, 2019        By: _/s/ Dennis M. Grady_
                                   DENNIS M. GRADY, Esq.
                                   Attorneys for PLAINTIFF
                                   Kam T. Tam